**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------------------x
**MAN DIESEL A/S f/k/a MAN B&W DIESEL A/S,**      :
                                                                                :      **09 CV 0687 (HB)**
                                             **Plaintiff,**      :
                                                                                :      **OPINION & ORDER**
                              -against-      :
                                                                                :
**SEAHAWK NORTH AMERICA LLC,**      :
                                                                                :
                                             **Defendants.**      :
------------------------------------------------------------------------x

**Hon. HAROLD BAER, JR., District Judge:**[*]

This is a maritime contract dispute brought by Man Diesel A/S f/k/a Man B&W Diesel A/S ("Plaintiff" or "Man Diesel") against Seahawk North America LLC ("Defendant" or "Seahawk"). Plaintiff moves for summary judgment pursuant to Federal Rule of Civil Procedure ("Rule") 56. Defendant cross-moves to vacate the Rule B attachment or to dismiss the complaint for failure to state a claim pursuant to Rule 12(b)(6). By letter dated June 30, 2009, I gave notice to the parties that I would treat Defendant's cross-motion to dismiss as one for summary judgment pursuant to Rule 12(d). For the reasons that follow, Plaintiff's motion is DENIED and Defendant's motion to dismiss, as converted to one for summary judgment, is GRANTED.[1]

## I.      BACKGROUND

### A.      Facts

Plaintiff Man Diesel is headquartered in Denmark and provides diesel engine services and spare parts for ocean-going vessels. Defendant Seahawk is a Florida-based ship management company that "provide[s] or procure[s] a variety of services on behalf of ship owners and operators." Spinelli Decl. ¶ 2. During the relevant time period, Seahawk  managed

---

[*] Mark McDonald, a 2009-10 intern in my Chambers and a second-year law student at New York University School of Law, provided substantial assistance in the research and drafting of this opinion.

[1] Because I find that summary judgment should be granted in Defendant's favor, I need not discuss the merits of Defendant's Rule E(4)(f) motion to vacate the Rule B attachment. When the underlying action is dismissed, the attachment is necessarily vacated. *Status Int'l S.A. v. M & D Maritme Ltd.*, No. 97 Civ. 9313, 1998 WL 108007, at *1 (S.D.N.Y. Mar. 11, 1998) ("Because the validity of Plaintiff's Rule B(1) attachment depended on Plaintiff's underlying claim, [the court's opinion dismissing the underlying claim] also vacated the attachment.") (citing *Status Int'l S.A. v. M & D Maritime Ltd.*, 994 F. Supp. 182, 186 (S.D.N.Y. 1998)).

the vessel M/V Tokai on behalf of its owners and operators, FTD Shipping Lines ("FTD Shipping").  *See* Spinelli Decl. Exh. 1.

Following discussions between the parties beginning in July 2007, Seahawk ordered from Man Diesel certain spare engine parts—including journal bearings for the input shaft gear, thrust bearings with pads, clutch plates, piston rings, etc.—in connection with repairs to the M/V Tokai.  The purchase order noted that Seahawk was acting "as agents for FTD Shipping."  *See* Spinelli Decl. Exh. 2.  On August 13, 2007, the parts were shipped by Man Diesel from Denmark to the M/V Tokai at Port Everglades, Florida.  On the same day, Man Diesel sent to Seahawk an invoice for the amount of $60,182.45, with payment due thirty days thereafter.  *See* Grusgaard Decl. Exh. 1.  There was some confusion and delay in the delivery of the parts to the M/V Tokai, and an officer of FTD Shipping communicated directly with Man Diesel by email to resolve the matter.  *See* Spinelli Decl. Exh. 5.

Seahawk sent Man Diesel a second purchase order on September 5, 2007 for thirty-two gaskets and two end plates for the lube oil cooler.  These parts were shipped and invoiced on September 26, 2007 for the agreed-upon amount of $2,505.33.  On September 28, 2007, Seahawk advised Man Diesel that it was returning certain unused parts.  Following the return of those parts, Man Diesel issued a credit note in the amount of $39,281.21 leaving a balance due of $23,469.57. [2]  In October, Seahawk sent Man Diesel a check for $2,281.10, apparently for payment of the amount due on the second invoice.  Seahawk admits that, by oversight, it neglected to pay freight costs in the amount of $224.23, which is the difference between the amount due on the second invoice and the amount it paid.  Spinelli Decl. ¶ 19.

On January 14, 2008, in response to Man Diesel's inquiries regarding overdue payment, a Seahawk employee emailed Plaintiff:

> Regarding payment, note that due to the fact that some of those Invoices shall be paid from another Company, some delay has been present in the payment process, I do understand that's nothing to do with MAN and that you should receive your payment on due time, and that Seahawk should honor this debt, but I am just mentioning this for asking for your understanding.

Spinelli Decl. Exh. 11.  To date, the $21,188.47 that remains due to Plaintiff has not been paid.

---

[2] By contrast, Defendant asserts that the balance was $20,964.24.  Though disputed, the amount does not affect the outcome of this case.

### B.        Procedural History

Plaintiff commenced this maritime action by filing a complaint in this District on January

23, 2009.  This Court granted Plaintiff's application for a Rule B attachment of Defendant's

assets within this District in the amount of $24,194.33 on January 27, 2009.  Plaintiff moved for

summary judgment and Defendant cross-moved to vacate the attachment or dismiss the

complaint for failure to state a claim.  By letter dated June 30, 2009, this Court gave the parties

notice that it was converting Defendant's motion to dismiss into one for summary judgment.

Though Plaintiff submitted a memorandum of law in response to this Court's letter, neither party

submitted any new evidence.

## II.        LEGAL STANDARD AND APPLICABLE LAW

### A.        Summary Judgment Standard

A motion for summary judgment must be granted if the moving party shows there is "no

genuine issue as to any material fact" and it is "entitled to judgment as a matter of law."  Fed. R.

Civ. P. 56(c).  There is no genuine factual issue where "no reasonable trier of fact could find for

the non-moving party."  *Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501,

507-08 (2d Cir. 2002).  The mere existence of disputed factual issues is insufficient to defeat a

motion for summary judgment; such issues must be material to the outcome of the litigation.

*Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11-12 (2d Cir. 1986).  "Substantive law will identify

which facts are material.  Only disputes over facts that might affect the outcome of the suit under

the governing law will properly preclude entry of summary judgment.  Factual disputes that are

irrelevant or unnecessary will not be counted." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242,

248 (1986).

### B.        Applicable Law

Common law principles apply to maritime contract disputes.  *Fireman's Fund McGee

Marine v. M/V Caroline*, No. 02 Civ. 6188, 2004 WL 287663, at *2 (S.D.N.Y. Feb. 11, 2004).

At common law, an agent who enters into a contract with a third party on behalf of a disclosed

principal "is not a party to the contract unless the agent and the third party agree otherwise."

Restatement (Third) of Agency § 6.01 (2006).  Thus, an agent for a disclosed principal is not

liable to the third party in the event the principal breaches the contract.  *Fireman's Fund*, 2004

WL 287663, at * 2.  A principal is disclosed if, at the time an agent and a third party enter the

contract, "the third party has notice that the agent is acting for a principal and has notice of the

principal's identity."  Restatement (Third) of Agency § 1.04(2)(a); *see also Hidden Brook Air, Inc. v. Thabet Aviation Int'l, Inc.*, 241 F. Supp. 2d 246, 265 (S.D.N.Y. 2002) (citing Restatement (Second) of Agency § 4 (1958)).  The key to disclosure is whether the third party has "sufficient information to distinguish the principal from all others." *Deutsche Bank Sec. Inc. v. Rhodes*, 578 F. Supp. 2d 652, 666 (S.D.N.Y. 2008) (citation omitted).  The third party has "sufficient information" of the principal's identity when it "knows, has reason to know, or should know of such identity." *Id*. (citation omitted).  In other words, if the information available to the third party is such that it *should* be able to distinguish the principal from all others, the principal is disclosed.  Restatement (Second) of Agency § 4, cmt. f.

## III.    DISCUSSION

The only material dispute in this case is whether Defendant entered into the contract for purchase of parts from Plaintiff as an agent for a disclosed principal.  More specifically, the issues are (1) whether Defendant was in fact an agent acting on behalf of FTD Shipping, and (2) whether FTD Shipping was a "disclosed" principal.

### A.    Defendant Was an Agent and Acted Within the Scope of Its Authority

Seahawk is a "ship management company" that "provide[s] or procure[s] a variety of services on behalf of ship owners and operators."  Spinelli Decl. ¶ 2.  Defendant entered into a "Standard Ship Management Agreement" with FTD Shipping on September 29, 2006 (hereinafter the "Management Agreement").  *See* Spinelli Decl. Exh. 1.  The Management Agreement states, "Subject to the terms and conditions herein provided, during the period of this Agreement, [Seahawk] shall carry out Management Services in respect of the Vessel *as agents for and on behalf of [FTD Shipping]*." (emphasis added).  *Id.*  Defendant contends that "[i]t is well known in the maritime industry that many vessel owner [sic] and operators employ ship management companies such as Seahawk and that *these companies act as agents of the owners/operators* when they perform or provide services to the vessels."  Spinelli Decl. ¶ 6 (emphasis added).  Plaintiff has not disputed this description of industry custom, nor has Plaintiff disputed the validity of Defendant's agency status as a general matter.

Plaintiff instead argues, in essence, that it was not within Defendant's scope of authority to shift the responsibility to pay third-party vendors like Plaintiff to its principal FTD Shipping.  Specifically, Plaintiff claims that the Management Agreement between Seahawk and its FTD Shipping *obligated* the former to settle invoices directly with vendors.  In fact, the Management

Agreement states the opposite.  Section 9.5 states that "[n]otwithstanding anything contained herein to the contrary, [Seahawk] shall in no circumstances be required to use or commit [its] own funds to finance the provision of the Management Services."  Spinelli Decl. Exh. 1.  The term "Management Services" is defined to include "arrangement and supervision of dry dockings, *repairs*, and the upkeep of the Vessel," and the "arrangement of the supply of the necessary stores, *spares* and lubricating oil."  *Id.*  According to the Complaint, the parts Defendant ordered from Plaintiff were for "*repairs or as spares*" for the M/V Tokai.  Compl. ¶ 4. Accordingly, Seahawk entered into the contract with Man Diesel in connection with providing "Management Services" on behalf of FTD Shipping.  Therefore, Seahawk acted within its authority vis-à-vis its principal when it forwarded the obligation to pay the amount owing on the invoice to FTD Shipping.[3]  There is thus no genuine issue of material fact as to whether Plaintiff entered into the contract at issue as an agent acting within the scope of its authority.[4]

> **B.      Defendant's Principal Was Disclosed**

To establish that it is entitled to dismissal of Plaintiff's claims, Seahawk next must prove that its principal was "disclosed," i.e., that Man Diesel had notice that Seahawk acted as an agent on behalf of a principal and that Man Diesel knew the identity of that principal.  Restatement (Third) of Agency §§ 1.04(2)(a), 6.01 (2006).  It is uncontested that the two purchase orders sent by Seahawk to Man Diesel stated Seahawk was acting "as agent for FTD Shipping."  *See* Spinelli Decl. Exhs. 2, 8.  Because the test is what the third party "should have known," *Rhodes*,

---

[3] Plaintiff contends that Defendant has submitted no evidence showing that it forwarded the invoices to FTD Shipping.  However, Defendant submitted an exhibit that appears to be a cover letter from Defendant transmitting the first Man Diesel invoice to Alan Egan of FTD Shipping on August 22, just nine days after Man Diesel sent the invoice to Defendant.  *See* Spinelli Decl. Exh. 10.  Plaintiff does not dispute the authenticity of this document, but appears to have overlooked it.

It should be noted here that even though Defendant partially paid the amount due on the second invoice, under the principles of agency law and the terms of the Management Agreement stated above, Defendant nonetheless is not obligated to pay Plaintiff anything more, including the amount that remains due on the second invoice.

[4] In response to my letter of June 30, 2009, Plaintiff raises for the first time the argument that Seahawk's failure to pay constitutes a breach of an implied warranty of authority.  As a preliminary matter, Defendant's valid agency status disposes of this argument, a necessary predicate of which is the defendant's lack of authority to bind the principal.  *See* Restatement (Third) of Agency § 6.10 (2006) ("A person who purports to make a contract, representation or conveyance to or with a third party on behalf of another person, *lacking power to bind that person*, gives an implied warranty of authority to the third party . . . .") (emphasis added).  In any event, it is worth noting that this argument is inconsistent with Plaintiff's contention elsewhere that it was unaware that Defendant was acting as an agent.  It is illogical to argue that Defendant simultaneously gave an implied warranty of agency authority and at the same time hid the fact that it was acting as an agent.  The argument is also unnecessary, as it presupposes that Defendant was not an agent acting within the scope of its authority.  If that were so, Seahawk would be liable to Man Diesel under simple contract law without need to resort to an implied warranty of authority theory of liability.

578 F. Supp. 2d at 666, Plaintiff had sufficient notice, as a matter of law, that Defendant was acting as an agent for some entity by that name. *Compare Fireman's Fund*, 2004 WL 287663, at * 4 (finding that principal was disclosed where the first sentence of the contract specifically provided that the agent was contracting "on behalf of Owners").

Plaintiff, however, argues that it was unclear who FTD Shipping was, or where or how it could be reached. It is true that the purchase orders contained no further identifying information for FTD Shipping. *See* Spinelli Decl. Exhs. 2, 8. Defendant "gave [Plaintiff] no mailing address, no email address, no phone or facsimile number" for FTD Shipping. Grusgaard Decl. ¶ 5. Plaintiff, however, fails to draw the Court's attention to the legal source of an obligation to provide such information. On the contrary, courts have held that disclosure need not include "the name—let alone the registered, legal name—of the principal." *Viacom Outdoor, Inc. v. Cerullo*, No. 04 Civ. 9789, 2006 WL 2289851, at *3 (S.D.N.Y. Aug. 10, 2006). In any case, Defendant has submitted evidence showing that Defendant's website contains contact information for FTD Shipping. Reilly Decl. ¶ 4. Because Plaintiff knew, or should have known that the name of Defendant's principal was FTD Shipping—and was able to find contact information for FTD Shipping—Defendant's principal was "disclosed" unless there are two or more "FTD Shippings" such that it was not possible to distinguish it "from all others." *Deutsche Bank*, 578 F. Supp. 2d at 666. Plaintiff does not so contend.

Instead, Plaintiff complains that research would not have revealed any conspicuous relationship between FTD Shipping and the M/V Tokai because an ownership report appears to show that the the vessel is owned by another company. Mansuy Decl. Exh. 6. While the ownership report creates a factual issue as to who owned the M/V Tokai, (as Defendant contends FTD Shipping owned the vessel), Plaintiff fails to show how the issue is material. *See Anderson*, 477 U.S. at 248. Defendant identified its principal FTD Shipping by name, not simply as the owner of the M/V Tokai. Spinelli Decl. Exhs. 2, 8. To put Man Diesel on notice of its principal, it was not necessary for Seahawk to identify the actual owner of the vessel. Because Plaintiff has failed to submit evidence rebutting Defendant's submission that it was possible to find contact information for FTD Shipping, Plaintiff has failed to set forth "specific facts" controverting Defendant's evidence that its principal was sufficiently disclosed. See Fed. R. Civ. P. 56(e). Therefore, Defendant's principal was "disclosed" as a matter of law.

### C.   Equitable Estoppel Is Not Warranted

Under applicable law, as an agent for a disclosed principal, Defendant is not liable for its principal's failure to perform on the contract. *Fireman's Fund*, 2004 WL 287663, at * 2. Plaintiff, however, argues that even if this Court finds that Defendant acted as an agent for a disclosed principal, Defendant should be equitably estopped from asserting such a defense in this action. Plaintiff appears to argue that because Defendant failed to disclose its principal in its course of dealing, it should now be estopped from asserting the disclosed principal defense. However, I have already decided as a matter of law that Defendant's principal was adequately disclosed, a finding that logically forecloses any equitable estoppel claim based on nondisclosure. Alternatively, Plaintiff argues that Seahawk's conduct induced it to rely on Seahawk for payment. Specifically, Plaintiff points to an email from a Seahawk employee, *see* Spinelli Decl. Exh. 11, which purportedly led Man Diesel to believe that Seahawk would pay the amount due. The plain import of this email, however, is to the contrary. First, there was no indication that this employee had the power to bind Seahawk, or even that any such promise was made (the email stated only that "Seahawk *should* honor this debt" (emphasis added)). *Id.* Second, the email specifically stated that another company was responsible for payment to Man Diesel ("some of those Invoices shall be paid from another Company"). *Id.* In any event, equitable estoppel requires a showing of harm, *Kosakow v. New Rochelle Radiology Associates, P.C.*, 274 F.3d 706, 725 (2d Cir. 2001), which is absent here because Plaintiff has not shown that it will be unable to recover from the real party to the contract, FTD Shipping.

### IV.   CONCLUSION

For the foregoing reasons, Plaintiff's motion is denied and Defendant's motion to dismiss, as converted by this Court into one for summary judgment, is granted. As a result, this Court's Order of January 27, 2009 granting Plaintiff's application for a Rule B attachment is hereby vacated. The Clerk of the Court is instructed to enter judgment consistent with this opinon, vacate the order of attachment, close this case and any open motions and remove the case from my docket.

SO ORDERED.

September 22, 2009
New York, New York

U.S.D.J.

7